UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH ANTHONY HILL,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>SAN DIEGO SHERIFF'S DEPARTMENT, MEDICAL SERVICES DIVISION; UCSD MEDICAL CENTER; ALFRED JOSHUA, M.D., Chief Medical Officer, Sheriff's Detention Services Bureau; WILLIAM GORE, Sheriff San Diego County,,<br><br>　　　　　　　　　　　Defendants. | Case No.: 15cv275 LAB (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING:**<br><br>**(1) DEFENDANT WILLIAM D. GORE'S MOTION TO DISMISS COMPLAINT [Doc. No. 6]; and**<br><br>**(2) DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S MOTION TO DISMISS THE COMPLAINT [Doc. No. 9].** |

Plaintiff Joseph Anthony Hill, presently detained at George Bailey Detention Center, filed this civil rights action under 42 U.S.C. § 1983 claiming that Defendants violated his constitutional right to be free from cruel and unusual punishment. The claims stem from events occurring on December 28, 2013, when Hill was shot during the process of his arrest. Immediately after the shooting he was treated at UCSD Medical Center. Hill complains that since the shooting he has not received follow-up medical treatment. Consequently, he alleges that Defendants San Diego Sheriffs Medical Services Division, UCSD Medical Center, Alfred Joshua, MD (Chief Medical Officer for the Sheriff Detention Services Bureau) and Sheriff William Gore have been deliberately indifferent to his medical needs by failing to provide continuing care.

Defendant William Gore, Sheriff of San Diego County, filed a motion to dismiss the complaint on the grounds that it fails to state a claim upon which relief can be granted. [Dkt. No. 6.] The Regents of the University of California (UCSD), erroneously sued as UCSD Medical Center, likewise filed a motion to dismiss, alleging that the complaint fails to state a claim against them on the basis of 42 U.S.C. § 1983. Hill's opposition briefs were due on April 28 and May 19, 2015. As of the date of this order, no opposition briefs have been filed.

For the following reasons, the court recommends that the district judge grant both motions to dismiss.

## I.  Summary of Complaint.[1]

On December 28, 2013, the San Diego Sheriff's Department shot Hill during the process of his arrest. They transported him to UCSD Medical Center for treatment. UCSD contracts with the San Diego Sheriff's Department to provide medical care to Detainees.

While at UCSD doctors discovered that Hill had a shattered bone in his left arm. His bicep detached, which likely caused related nerve damage. Doctors also found a bullet lodged near Hill's aorta.

---

[1] These facts are summarized from pages 3-5 of Plaintiff's complaint. Dkt. No. 1. Because this case comes before the court on a motion to dismiss, the court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn from it, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Hill was admitted to UCSD for stabilization. While hospitalized, he received antibiotics and pain killers.

### A. The Lodged Bullet.

Doctors told Hill they would leave the bullet near his heart in place for the time being. They explained that the bullet was too close to the heart to remove. They planned to monitor the bullet for movement then act at the appropriate time. The doctors also said that if the bullet moved, it could kill him.

To date, Hill has never been re-evaluated or tested to find out whether the bullet moved or if he could benefit from any treatment or surgery. Hill has chest and back pain and wonders whether the pain stems from movement of the bullet. He lives in fear that on any day the bullet could move, causing his death.

### B. Injuries to the Arm and Hand.

Doctors put a plastic, removable brace around Hill's arm and told him the arm would heal on its own. They also told him that there was nerve damage associated with the arm but that they could not do anything at that time. Instead, they would take a "wait and see" approach.

Approximately eight months after the injury, Hill was taken to UCSD for a nerve conduction test. A technician told him that he had extensive nerve damage. Hill did not consult with a doctor at that time.

///

Hill has not used his arm in over a year. He can no longer use his hand because it has atrophied. His fingers curl inward toward his palm and he cannot move his fingers or wrist. Hill remains in constant, excruciating pain. The two daily pain killers he receives make no appreciable difference in the level of pain.

An orthopedic surgeon recently told Hill that if his arm is to function "anywhere near properly again," it would require extensive surgery that includes a bone graft from his hip bone. The doctor also said Hill would need extensive surgery and physical therapy for his hand and related nerves to function anywhere near properly again. Because of the extensive physical therapy required to make his hand functional, the doctor recommended fusing Hill's wrist bone, which would effectively not let Hill use his hand.

Hill believes that if his arm had been tested and treated sooner, he could have avoided much of the pain and the loss of functionality. Because Hill cannot use his arm he cannot complete normal, basic daily functions—like showering or dressing—without help from other inmates. He has not gotten a full night sleep in over a year because most sleeping positions cause additional pain.

**C.     Relief Requested.**

Hill requests the following injunctive and legal relief: (1) evaluation of the bullet lodged near his aorta; (2) surgery and rehabilitation to restore his arm to complete functionality; and (3) damages.

## II. Discussion.

### A. Motion to Dismiss Standard.

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). But the court need not accept as true legal conclusions cast as factual allegations. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears in propria persona in a civil rights case, the court "must construe the pleadings liberally and must

afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

### B. Deliberate Indifference to Medical Needs.

Hill bases his three claims for delay in medical care on the due process clause of the fourteenth amendment because he was a pretrial detainee during the relevant time period. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (stating "[c]laims by pretrial detainees are analyzed under the fourteenth amendment due process clause"). Hill's rights as a pretrial detainee are "at least as great" as a convicted prisoner's rights. *See id.* (holding that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"). Further, while pretrial detainees must bring their claims for failure to address medical needs through the due process clause, those claims are analyzed under the "deliberate indifference" standard of the eighth amendment. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010); *see Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (comparing pretrial detainees' rights under the fourteenth amendment to prisoners' rights under the eighth amendment and applying the same standards).

Prison officials violate the eighth amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.

2002) (citation omitted). A plaintiff must prove that the defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* (internal citations omitted).

A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotations omitted). "Deliberate indifference is a high legal standard." *Id.* at 1060. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *See Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106).

### 1. Sheriff Gore

Hill seeks both damages and injunctive relief in his complaint, implying that he is suing Sheriff Gore in both his personal and official capacities.

#### a. *Claims Against Gore in His Personal Capacity*.

There is no respondeat superior liability for government officials due to the actions of their subordinates. *Iqbal*, 556 U.S. at 676. Consequently, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (rejecting conclusory allegations that high level employees "knew of, condoned, and willfully" subjected Plaintiff to unconstitutional conditions). Supervisory prison officials may only be held liable for the allegedly unconstitutional violations of a subordinate if the plaintiff sets forth facts that show (1) how or to what extent they personally participated in or directed a subordinate's actions; and (2) in either acting or failing to act, they were an actual and proximate cause of the deprivation of the plaintiff's constitutional rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To the extent Hill seeks damages against Gore, he fails to state a claim because he makes no specific factual allegations of individualized constitutional wrongdoing by him. For example, he does not allege that Gore directed subordinates to ignore Hill's medical needs. He does not allege facts that show Gore even knew about his condition, or that Hill ever made requests for medical treatments that were denied. Even liberally construed, Hill's complaint fails to set forth facts that state an individualized constitutional claim against Sheriff Gore. *See Iqbal*, 556 U.S. at 678 (finding a failure to state a plausible claim because the pleading was completely "devoid of [the] further factual enhancement" that is required to overcome the respondeat superior bar and "nudge[] his claims. . . across the line from conceivable to plausible").

The court, therefore, recommends that Hill's claims against Sheriff Gore in his personal capacity be dismissed with leave to amend. *See Krier v. Ray*, 341 Fed. Appx.

295, 297 (9th Cir. 2009) (finding leave to amend a pro se complaint is appropriate if it seems at all possible the plaintiff can correct the defect).

### b. *Claims Against Gore in His Official Capacity.*

To the extent that Hill seeks injunctive relief and sues Gore in his official capacity based solely on the claim that he is the Sheriff, he likewise fails to state a claim. "Official capacity suits [under § 1983] . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)); *see Brandon v. Holt*, 469 U.S. 464, 472 (1985) (actions of department head in his official capacity akin to actions of municipality itself).

While the County would be the appropriate defendant in place of Gore in his official capacity, the County may be held liable only if Hill alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality, or a "final decision maker" for the municipality. *Monell*, 436 U.S. at 690; *see Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). In other words, "respondeat superior and vicarious liability are not cognizable theories of recovery against a municipality." *Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1109-10 (9th Cir. 2002), aff'd in part en banc, 319 F.3d 465 (9th Cir. 2003).

1    Here, Hill alleges he did not receive follow-up medical treatment after his arrest in
2    December 2013.  Compl., pp.3-5.  But "a municipality cannot be held liable solely
3    because it employs a tortfeasor."  *Monell*, 436 U.S. at 691; *Navarro*, 72 F.3d at 714.
4    Instead, to allege a claim of municipal liability, Hill must include in his pleading enough
5    "factual content" to support a reasonable inference to show that:  (1) he was deprived of a
6    constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate
7    indifference to his constitutional right; and (4) the policy was the "moving force behind
8    the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.
9    1996); *see also Iqbal*, 556 U.S. at 678.

10   As currently pleaded Hill's complaint fails to state a claim against Gore, in his
11   official capacity, or against the county itself, because he fails to allege any facts that
12   "might plausibly suggest" that he was denied medical care pursuant to any municipal
13   custom, policy, or practice implemented or promulgated with deliberate indifference to
14   his constitutional rights, or that such a policy was the "moving force" or cause of his
15   injury. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying
16   *Iqbal*'s pleading standards to *Monell* claims); *Board of the County Comm'rs v. Brown*,
17   520 U.S. 397, 404 (1997) (holding that "a plaintiff must show that the municipal action
18   was taken with the requisite degree of culpability and must demonstrate a direct causal
19   link between the municipal action and the deprivation of federal rights").
20

Accordingly, the court recommends that Hill's claims against Sheriff Gore in his official capacity be dismissed without leave to amend as to Gore but with leave to amend as to the County itself. *See Krier v. Ray*, 341 Fed. Appx. at 297.

### 2. *San Diego Sheriff's Department Medical Services Division*

Hill names the San Diego Sheriff's Department Medical Services Division as a defendant. Hill is not proceeding in forma pauperis and thus caused the complaint to be served by his own process server on that defendant.[2] The Medical Services Division was served on March 9, 2015 but has not yet appeared in this case. *See* Dkt. No. 8.

A local law enforcement department is not a proper defendant under § 1983. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.") (citation omitted); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.'").

---

[2] Because Hill is not proceeding in forma pauperis under 28 U.S.C. § 1915(a), his complaint was not screened for claims that are frivolous, malicious, fail to state a claim, or that seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

1  Accordingly, this court recommends that defendant "San Diego Sheriff's
2  Department Medical Services Division" be dismissed sua sponte and without leave to
3  amend for failure to state a claim upon which § 1983 relief can be granted. *See Wilhelm*
4  *v. Rotman*, 680 F.3d 1113, 1121-22 (9th Cir. 2012) (dismissal is proper "if it appears
5  beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his
6  claim which would entitle him to relief").

        **3.**    **UCSD**

8  UCSD Medical Center, owned and operated by the Regents of the University of
9  California, have a contract with the County to provide medical services to prisoners and
10 detainees. Compl., p.2; Opp'n, p.4. Hill alleges that after he was shot, he was
11 transported to UCSD and received medical treatment there. Approximately eight months
12 after the injury, he was taken to UCSD for a nerve conduction test and a follow-up
13 consultation with an orthopedic surgeon. Compl. pp.3, 4.

        *a.*   *Failure to Provide Follow-Up Medical Care.*

15 A plaintiff must prove that a defendant prison official (1) deprived him of the
16 "minimal civilized measure of life's necessities;" and (2) acted with deliberate
17 indifference by denying, delaying or intentionally interfering with medical treatment.
18 *Farmer*, 511 U.S. at 837 (internal citations omitted). Here, Hill makes no allegations that
19 UCSD failed to provide him medical services the night he was shot, or that its actions
20 resulted in the failure to provide follow-up medical care. There is no allegation that

1  UCSD knew of and disregarded "an excessive risk to inmate health or safety." *Id.* For
2  example, there are no allegations that UCSD was asked to provide medical care but
3  refused.  The fact that they are under contract to provide medical care for detainees cuts
4  against the idea that they refused to provide medical care for Hill.  Hill, therefore, fails to
5  plead facts that allows the court to draw the reasonable inference that UCSD acted with
6  deliberate indifference in failing to provide Hill with follow-up medical care.

7  Based on these facts, the court recommends that Hill's claims against UCSD for
8  failure to provide follow-up medical care be dismissed with leave to amend.  *See Krier*,
9  341 Fed. Appx. at 297.

### b. *Initial Treatment and Medical Judgment.*

11  UCSD doctors made the medical judgment to leave a bullet lodged near Hill's
12  aorta for re-evaluation in the future, and made decisions that may or may not have
13  affected the residual nerve damage and pain in his arm.  A prisoner's civil rights will only
14  be abridged if "the indifference to his medical needs [is] substantial.  Mere 'indifference,'
15  'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton*
16  *v. Cutter Lab's*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).
17  Further, an inadvertent failure to provide medical care does not constitute an unnecessary
18  and wanton infliction of pain. *Estelle*, 429 U.S. at 105-106.  "Thus, a complaint that a
19  physician has been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the eighth amendment." *Id.* at 106. Medical malpractice is not a constitutional violation simply because the victim is a prisoner. *Id.*

Here, Hill attaches over 100 pages of medical records documenting the care he received from UCSD. There is no evidence that UCSD ever refused to treat him. On these facts, the court can find no reasonable inference of deliberate indifference to Hill's condition. At most, Hill alleges that UCSD negligently left the bullet lodged in his body or negligently treated his arm and hand. But such allegations can never state a deliberate indifference claim. *See Gray v. Hernandez*, 651 F. Supp.2d 1167, 1176 (S.D. Cal. 2009) ("Allegations of an inadvertent failure to provide adequate medical care cannot sustain an eighth amendment claim.") Hill, therefore, does not plead facts content that allows the court to draw the reasonable inference UCSD acted with deliberate indifference when they provided him with medical care.

Accordingly, this court recommends that the claims against UCSD, insofar as they involve medical judgment for the treatment provided, be dismissed with prejudice. *See Wilhelm*, 680 F.3d at 1121-22.

### III. <u>Conclusion.</u>

For the reasons stated above, this court **RECOMMENDS** that the district judge:

(1) **GRANT** the motion to dismiss Hill's claims against Sheriff Gore in his personal capacity with leave to amend.

(2) **GRANT** the motion to dismiss Hill's claims against Sheriff Gore in his official capacity without leave to amend as to Gore but with leave to amend as to the County itself, if Hill seeks to assert a *Monell* claim.

(3) **SUA SPONTE DISMISS** defendant "San Diego Sheriff's Department Medical Services Division" without leave to amend.

(4) **GRANT** the motion to dismiss Hill's claims against UCSD for failure to provide follow-up medical care with leave to amend.

(5) **GRANT** the motion to dismiss Hill's claims against UCSD for failure to provide adequate medical care without leave to amend.

The court submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  No later than **June 26, 2015**, any party to this action may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be filed with the Court and served on all parties no later than **July 6, 2015**.  The parties are advised that failure to file objections within the specified time may waive the right to those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 8, 2015

Hon. Nita L. Stormes
United States Magistrate Judge