UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Joseph Anthony Hill,<br>　　　　　　　　　　　Plaintiff,<br>v.<br><br>San Diego Sheriff's Department Medical Services Division, San Diego Sheriff's Department; UCSD Medical Center; Alfred Joshua, M.D. Chief Medical Officer, Sheriff's Detention Services Bureau; William Gore, Sheriff San Diego County,<br>　　　　　　　　　　　Defendants. | 15cv275 LAB (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT JOSHUA'S MOTION TO DISMISS**<br><br>**[Dkt. No. 17]** |
|---|---|

　　　As a pretrial detainee, Plaintiff Joseph Anthony Hill filed this civil rights action under 42 U.S.C. § 1983 claiming that Defendants violated his constitutional right to be free from cruel and unusual punishment.  The claims stem from events occurring on December 28, 2013, when Hill was shot during the process of his arrest.  Immediately after the shooting he was treated at UCSD Medical Center.  Hill complains that since the shooting he has not received follow-up medical treatment.  Consequently, he alleges that Defendants San Diego Sheriffs Medical Services Division, UCSD Medical Center, Alfred Joshua, MD (Chief Medical Officer for the Sheriff Detention Services Bureau) and Sheriff William Gore have been deliberately indifferent to his medical needs by failing to provide continuing care.

Defendant Alfred Joshua, M.D. filed a motion to dismiss the complaint on grounds that it fails to state a claim against him. Hill's opposition brief was due October 30, 2015. As of the date of this order, no opposition brief has been filed. For the following reasons, the court **RECOMMENDS** that the motion to dismiss be **GRANTED**.

## I. PROCEDURAL BACKGROUND

On July 13, 2015, the district court adopted this court's report and recommendation (R&R) regarding two of the defendants' motions to dismiss, and dismissed several claims and defendants from this case. The only remaining defendant was Alfred Joshua, M.D., who had not yet responded to the complaint.

Hill was given leave to amend most of the claims in the complaint. His amended complaint was due August 28, 2015. As of the date of this order, Hill has not filed an amended complaint.

On September 17, 2015 the court received notice that the "Order Adopting the Report and Recommendation" was returned as undeliverable because Hill is no longer located at George Bailey Detention Facility and is apparently on parole. Even though under Civil Local Rule 83.11.b Hill must notify the court of any change of address, he has not provided a forwarding address.

Joshua served this motion to dismiss on Hill by mail on October 1, 2015, to an address that differs from the one on the docket. Joshua never informed the court whether the motion was returned as undeliverable.

## II. SUMMARY OF COMPLAINT.[1,2]

On December 28, 2013, the San Diego Sheriff's Department shot Hill during the

---

[1] This "Summary of Complaint" section is quoted directly from this court's previous R&R determining the two previously-filed motions to dismiss in this case.

[2] These facts are summarized from pages 3-5 of Plaintiff's complaint. Dkt. No. 1. Because this case comes before the court on a motion to dismiss, the court must accept as true all material allegations in the complaint and must also construe the complaint, and all reasonable inferences drawn from it, in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

process of his arrest. They transported him to UCSD Medical Center for treatment. UCSD contracts with the San Diego Sheriff's Department to provide medical care to Detainees.

While at UCSD doctors discovered that Hill had a shattered bone in his left arm. His bicep detached, which likely caused related nerve damage. Doctors also found a bullet lodged near Hill's aorta.

Hill was admitted to UCSD for stabilization. While hospitalized, he received antibiotics and pain killers.

**A. The Lodged Bullet.**

Doctors told Hill they would leave the bullet near his heart in place for the time being. They explained that the bullet was too close to the heart to remove. They planned to monitor the bullet for movement then act at the appropriate time. The doctors also said that if the bullet moved, it could kill him.

To date, Hill has never been re-evaluated or tested to find out whether the bullet moved or if he could benefit from any treatment or surgery. Hill has chest and back pain and wonders whether the pain stems from movement of the bullet. He lives in fear that on any day the bullet could move, causing his death.

**B. Injuries to the Arm and Hand.**

Doctors put a plastic, removable brace around Hill's arm and told him the arm would heal on its own. They also told him that there was nerve damage associated with the arm but that they could not do anything at that time. Instead, they would take a "wait and see" approach.

Approximately eight months after the injury, Hill was taken to UCSD for a nerve conduction test. A technician told him that he had extensive nerve damage. Hill did not consult with a doctor at that time.

Hill has not used his arm in over a year. He can no longer use his hand because it has atrophied. His fingers curl inward toward his palm and he cannot move his fingers or wrist. Hill remains in constant, excruciating pain. The two daily pain killers he receives

make no appreciable difference in the level of pain.

An orthopedic surgeon recently told Hill that if his arm is to function "anywhere near properly again," it would require extensive surgery that includes a bone graft from his hip bone. The doctor also said Hill would need extensive surgery and physical therapy for his hand and related nerves to function anywhere near properly again. Because of the extensive physical therapy required to make his hand functional, the doctor recommended fusing Hill's wrist bone, which would effectively not let Hill use his hand.

Hill believes that if his arm had been tested and treated sooner, he could have avoided much of the pain and the loss of functionality. Because Hill cannot use his arm he cannot complete normal, basic daily functions—like showering or dressing—without help from other inmates. He has not gotten a full night sleep in over a year because most sleeping positions cause additional pain.

**C. Relief Requested.**

Hill requests the following injunctive and legal relief: (1) evaluation of the bullet lodged near his aorta; (2) surgery and rehabilitation to restore his arm to complete functionality; and (3) damages.

**III.   DISCUSSION**

**A. Motion to Dismiss Standard.[3]**

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). But the court need not accept as true legal conclusions cast as factual

---

[3] The case law cited in this R&R, as well as part of the analysis, is identical to the law and analysis cited in certain parts of the court's R&R adjudicating the previously-filed motions to dismiss.

allegations. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears in propria persona in a civil rights case, the court "must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

### B. Deliberate Indifference to Medical Needs.

Hill bases his three claims for delay in medical care on the due process clause of the fourteenth amendment because he was a pretrial detainee during the relevant time period. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (stating "[c]laims by pretrial detainees are analyzed under the fourteenth amendment due process clause"). Hill's rights as a pretrial detainee are "at least as great" as a convicted prisoner's rights. *See id.* (holding that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"). Further, while pretrial detainees must bring their claims for failure to address medical needs through the due process clause, those claims are analyzed under the "deliberate indifference" standard of the eighth amendment. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010); *see Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (comparing pretrial detainees' rights under the fourteenth amendment to prisoners'

rights under the eighth amendment and applying the same standards).

Prison officials violate the eighth amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). A plaintiff must prove that the defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* (internal citations omitted).

A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotations omitted). "Deliberate indifference is a high legal standard." *Id.* at 1060. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *See Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106).

**C. Defendant Joshua.**

Hill seeks both damages and injunctive relief in his complaint, implying that he is suing Joshua in both his personal and official capacities. In his identification of Joshua in the complaint, Hill says, "As the Chief Medical Officer, [Joshua] allowed the personnel under his supervision, to act with deliberate indifference in that they failed to provide adequate medical care for serious condition[s]." Compl., p.2. Hill does not specifically mention Joshua anywhere else in the complaint.

*1.    Claims Against Joshua in His Personal Capacity.*

There is no respondeat superior liability for government officials due to the actions of their subordinates. *Iqbal*, 556 U.S. at 676. Consequently, "[b]ecause vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (rejecting conclusory allegations that high level employees "knew of, condoned, and willfully" subjected Plaintiff to unconstitutional conditions).  Supervisory prison officials may only be held liable for the allegedly unconstitutional violations of a subordinate if the plaintiff sets forth facts that show (1) how or to what extent they personally participated in or directed a subordinate's actions; and (2) in either acting or failing to act, they were an actual and proximate cause of the deprivation of the plaintiff's constitutional rights.  *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To the extent Hill seeks damages against Joshua, he fails to state a claim because he makes no specific factual allegations of individualized constitutional wrongdoing by him.  For example, he does not allege that Joshua directed subordinates to ignore Hill's medical needs or to only provide minimal medical care.  He does not allege facts that show Joshua even knew about his condition, or that Hill ever made requests for medical treatments that Joshua denied.  Even liberally construed, Hill's complaint fails to set forth facts that state an individualized constitutional claim against Chief Medical Officer Joshua.  *See Iqbal*, 556 U.S. at 678 (finding a failure to state a plausible claim because the pleading was completely "devoid of [the] further factual enhancement" that is required to overcome the respondeat superior bar and "nudge[] his claims. . . across the line from conceivable to plausible").

The court, therefore, recommends that Hill's claims against Joshua in his personal capacity be dismissed with leave to amend.  *See Krier v. Ray*, 341 Fed. Appx. 295, 297 (9th Cir. 2009) (finding leave to amend a pro se complaint is appropriate if it seems at all possible the plaintiff can correct the defect).

### 2. *Claims Against Joshua in His Official Capacity.*

To the extent that Hill seeks injunctive relief and sues Joshua in his official capacity based solely on the claim that he is the Chief Medical Officer, he likewise fails to state a claim.  "Official capacity suits [under § 1983] . . . 'generally represent only

another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)); *see Brandon v. Holt*, 469 U.S. 464, 472 (1985) (actions of department head in his official capacity akin to actions of municipality itself).

While the County would be the appropriate defendant in place of Joshua in his official capacity, the County may be held liable only if Hill alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality, or a "final decision maker" for the municipality. *Monell*, 436 U.S. at 690; *see Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). In other words, "respondeat superior and vicarious liability are not cognizable theories of recovery against a municipality." *Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1109-10 (9th Cir. 2002), aff'd in part en banc, 319 F.3d 465 (9th Cir. 2003).

Here, Hill alleges he did not receive follow-up medical treatment after his arrest in December 2013. Compl., pp.3-5. But "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691; *Navarro*, 72 F.3d at 714. Instead, to allege a claim of municipal liability, Hill must include in his pleading enough "factual content" to support a reasonable inference to show that: (1) he was deprived of a constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678.

As currently pleaded Hill's complaint fails to state a claim against Joshua, in his official capacity, or against the county itself, because he fails to allege any facts that "might plausibly suggest" that he was denied adequate medical care pursuant to any municipal custom, policy, or practice implemented or promulgated with deliberate indifference to his constitutional rights, or that such a policy was the "moving force" or

cause of his injury. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying Iqbal's pleading standards to *Monell* claims); *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights").

Accordingly, the court recommends that Hill's claims against Joshua in his official capacity be dismissed without leave to amend as to Joshua but with leave to amend as to the County itself. *See Krier v. Ray*, 341 Fed. Appx. at 297.

### IV. CONCLUSION[4]

For the reasons stated above, this court **RECOMMENDS** that the district judge:

(1) **GRANT** the motion to dismiss Hill's claims against defendant Joshua in his personal capacity with leave to amend.

(2) **GRANT** the motion to dismiss Hill's claims against defendant Joshua in his official capacity without leave to amend as to Joshua but with leave to amend as to the County itself, if Hill seeks to assert a *Monell* claim.

(3) **ORDER** that the case be administratively closed.

(4) If the district judge grants leave to amend the claims against defendant Joshua, set a deadline for **30 days** out after the adjudication of this R&R for Hill to file an amended complaint as to defendant Joshua.

This court **FURTHER ORDERS** that the Clerk serve a copy of this order to the address of record as well as to the address listed on the "Declaration of Service" [Dkt. No. 17-2].

---

[4] The court notes that dismissal without prejudice due to failure to prosecute would also be proper under Civil Local Rule 83.11.b, as more than 60 days have passed since mail to Hill's last designated address was returned as undeliverable ("If mail directed to a pro se plaintiff by the clerk at the plaintiff's last designated address is returned by the Post Office, and if such plaintiff fails to notify the court and opposing parties within 60 days thereafter of the plaintiff's current address, the court may dismiss the action without prejudice for failure to prosecute.") Joshua did not move to dismiss under those grounds.

The court submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).  No later than **January 22, 2016**, any party to this action may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be filed with the Court and served on all parties no later than **January 29, 2016**.  The parties are advised that failure to file objections within the specified time may waive the right to those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  December 30, 2015

Hon. Nita L. Stormes
United States Magistrate Judge